# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| SHENA BURROW, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 4:18-CV-1226 PLC |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

Plaintiff Shena Burrow seeks review of the decision by Defendant Commissioner of Social Security Andrew Saul denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act.  Because the Court finds that substantial evidence supports the decision to deny benefits, the Court affirms the denial of Plaintiff's applications.

**I.      Background and Procedural History**

In February 2016, Plaintiff, who was born in July 1979, filed applications for DIB and SSI alleging that she was disabled as of November 15, 2015 as a result of:  "arthritis, bulging discs, spinal stenosis, depression, hypertension, nerve damage in wrist."  (Tr. 60, 87-88, 193-99)  The Social Security Administration (SSA) denied Plaintiff's claims, and she filed a timely request for a hearing before an administrative law judge (ALJ).  (Tr. 84-85, 98-99)

In February 2018, the ALJ conducted a hearing at which Plaintiff and a vocational expert testified.  (Tr. 29-59)  In a decision dated March 5, 2018, the ALJ found that Plaintiff "has not been under a disability, as defined in the Social Security Act, from November 15, 2015, through the date of this decision[.]"  (Tr. 11-22)  Plaintiff filed a request for review of the ALJ's decision

with the SSA Appeals Council, which denied review.  (Tr. 1-6)  Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the SSA's final decision.  Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

## II. Evidence Before the ALJ

Plaintiff testified that she began working as a "CNA, CMT" in 1997.  (Tr. 33-34)  Plaintiff "mostly worked in nursing homes and home care," doing "both patient care and patient medications."  (Tr. 46-47)  Plaintiff stated that she stopped working in November 2015 after a "kidney infection triggered the problems in my back[.]"  (Tr. 34, 46)  Plaintiff stated that her back improved with "infusions from pain management, [but] I still have weakness and pain shooting through my legs and arms."  (Id.)  Plaintiff specified that the "shooting pain" affected her right leg, hip, and shoulder.  (Tr. 50)  Plaintiffs doctors did not recommend surgery.  (Tr. 49)

Plaintiff testified that, sometime after her back problems developed, she was diagnosed with fibromyalgia, which affected her arms, legs, neck, chest, and back.  (Id.)  Plaintiff explained that, while her back conditions caused her to feel "more stuck, like if I move, it hurts real bad," her fibromyalgia pain was "more of a consistent pain … just little things hurt and it's like it's radiating … like a body ache."  (Tr. 35)  Plaintiff's medications for fibromyalgia pain "help but do[] not last as long."  (Id.)

Plaintiff affirmed that she had been diagnosed with depression, anxiety, and bipolar disorder.  (Tr. 39)  Plaintiff saw a psychiatrist who prescribed medications, which helped "some." (Id.)  Plaintiff began seeing her psychiatrist because she "was kind of flipping out at the house …. I wasn't used to being at home, I was always at work or doing something with my kid, I play kickball.  I was really active."  (Tr. 41)  Plaintiff explained that, as her anxiety increased, she "started lashing out," verbally and physically, at her husband.  (Id.)

Plaintiff experienced crying spells "maybe twice some weeks, some weeks I don't have [any]," and they usually lasted "a day or so." (Tr. 52)  She did not go out in public alone because "I had episodes where I almost fainted because I had a panic attack…." (Tr. 41)  Plaintiff's last panic attack was "[a] couple of weeks ago." (Id.)  Plaintiff took Vistaril when she felt a panic attack "coming on" and Xanax "for the bigger ones."  (Tr. 42)  Plaintiff estimated that she experienced panic attacks "twice a month," and they generally lasted "about half an hour."  (Tr. 48)

Plaintiff testified that, on a typical day, she slept "a lot … the majority of my day…." (Tr. 36)  Plaintiff usually arose around 9:00 a.m. and would then "fix…something to eat …, wash the dishes, … [a]nd then I'll wait for the aid[e] to come" around 3:00 p.m.  (Tr. 37)  Plaintiff explained that, since 2016, she had an aide who helped her shower, do laundry, run errands, and "straighten up" the house.  (Id.)  During the day, Plaintiff slept "about four to five hours maybe off and on." (Tr. 38)  Plaintiff stated that she used to go to church every week but "I go when I could ride with somebody now." (Tr. 44)  She explained that she preferred not to drive the "45, 30 to 40 minutes" to church because her "mind wander[ed]" when she drove and she had become lost.  (Id.)  Plaintiff stated that the church service usually lasted one hour, and she sat "in the back where I don't have to sit like next to a whole lot of people…." (Id.)

A vocational expert also testified at the hearing.  (Tr. 54-59)  The ALJ asked the ALJ to consider a hypothetical individual with Plaintiff's age, education, and past work experience able to perform light work with the following limitations:

> [T]hey could frequently reach overhead and in all directions with the left and right arm; they could never climb ramps and stairs, balance, stoop, kneel, crouch and crawl; this person could occasionally work in dust, odors, fumes and pulmonary irritants; they should never work in vibration; they would be limited to simple, routine and repetitive tasks; and simple work-related decisions; they could have occasional interaction with supervisors, coworkers and the public[.]

3

(Tr. 56) The vocational expert stated that such an individual could not perform Plaintiff's past relevant work but could perform other jobs in the national economy, such as "laminating machine off-bearer," "sorter, agricultural produce," and " folding machine operator." (Tr. 56-57) When the ALJ further limited the hypothetical individual to sedentary work, the vocational expert stated that such individual could perform work as a "patcher in the household appliances industry," "polisher, eyeglass frames," and table worker.[1] (Tr. 57)

### III. Standards for Determining Disability Under the Act

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. 42 U.S.C. § 423 (a)(1); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). The Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 42 U.S.C. § 423(d)(1)(A); See also 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. §§ 404.1520, 416.920; see also McCoy v. Astrue, 648 F.3d 605, 511 (8th Cir. 2011). Those steps require a claimant to show that he or she: (1) is not engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments which significantly limits his or her physical or mental ability to do basic work activities or (3) has an

---

[1] In regard to Plaintiff's medical records, the Court adopts the facts provided by Plaintiff in her Statement of Uncontroverted Facts and admitted by the Commissioner. [ECF Nos. 19-1, 24-1]

impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) is unable to return to his or her past relevant work; and (5) the impairments prevent him or her from doing any other work. Id.

Prior to step four, the Commissioner must assess the claimant's residual functional capacity (RFC), which is "the most a claimant can do despite [his or her] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. 404.1545(a)(1)); see also 20 C.F.R. §§ 416.920(e), 416.945(a)(1).  Through step four, the burden remains with the claimant to prove that he or she is disabled. Moore, 572 F.3d at 523.  At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. Id.; Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012).

### IV.   The ALJ's Decision

The ALJ applied the five-step evaluation set forth in 20 C.F.R. §§ 404.1520, 416.920 and found that Plaintiff:  (1) had not engaged in substantial gainful activity since November 15, 2015, the alleged onset date; and (2) had the severe impairments of spondylosis of the cervical and lumbar spine, fibromyalgia, asthma, obesity, and "mental impairments variously diagnosed as depressive disorder, generalized anxiety disorder, panic disorder, bipolar disorder, and borderline personality disorder." (Tr. 14)  Additionally, the ALJ determined that Plaintiff had the non-severe impairments of heart palpitations and "right carpal tunnel syndrome status-post release surgery and forearm injury."  (Id.)  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Id.)

5

The ALJ found that, although Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical and other evidence in the record for the reasons explained in this decision." (Tr. 18) The ALJ discredited Plaintiff's subjective complaints because they were "out of proportion to the objective medical evidence," inconsistent with her activities of daily living, and unsupported by treating physicians' opinions. (Tr. 17-18)

After reviewing Plaintiff's testimony and medical records, the ALJ determined that Plaintiff had the RFC to perform sedentary work with the following limitations:

> [T]he claimant can frequently reach overhead and in all directions with the left and right arms.  She can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds.  She can occasionally balance, stoop, kneel, crouch, and crawl.  She [can] occasionally work in dust, odors, fumes, and pulmonary irritants.  She can never work in vibration.  The claimant is limited to simple, routine, and repetitive tasks, and simple work-related decisions.  She can have occasional interaction with supervisors, coworkers, and the public.

(Tr. 16)  Based on the vocational expert's testimony, the ALJ found that Plaintiff was unable to perform any past relevant work, but there were jobs that existed in the national economy that she could perform, such as patcher, polisher, and table worker. (Tr. 20-22)  The ALJ therefore concluded that Plaintiff was not disabled. (Tr. 22)

## V.   Discussion

Plaintiff claims the ALJ erred in:  (1) determining her RFC because it was not supported by "some medical evidence"; and (2) presenting the vocational expert a hypothetical question that did not "capture the concrete consequences" of her impairments.  [ECF No. 19]  In response, the Commissioner asserts that the ALJ properly determined Plaintiff's RFC and relied on the vocational expert's testimony.  [ECF No. 24]

6

A.  Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Chesser v. Berryhill, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)).  A court must consider "both evidence that supports and evidence that detracts from the ALJ's decision, [but it] may not reverse the decision merely because there is substantial evidence support[ing] a contrary outcome." Id. (quoting Prosch, 201 F.3d at 1012) (internal quotation marks omitted).

A court does not "reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determination are supported by good reasons and substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)).  Therefore, a court must affirm the ALJ's decision if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]" Wright v. Colvin, 789 F.3d 847, 852 (8th Cir. 2015) (quoting Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011)).

B.  RFC

Plaintiff claims that the ALJ erred in finding that she could perform a limited range of sedentary work because his findings were not supported by "some medical evidence" as "required under the standards" set forth in Singh v. Apfel, 222 F.3d 448 (8th Cir. 2000) and Lauer v. Apfel, 245 F.3d 700 (8th Cir. 2001).  In particular, Plaintiff argues that the ALJ failed to:  (1) consider MO HealthNet's provision of a home health aide and explain how her mental impairments affected her RFC; and (2) "properly analyze the probative value of the objective evidence" relating to

7

Plaintiff's physical limitations. The Commissioner counters that substantial evidence on the record as a whole supported the ALJ's decision.

RFC is the most a claimant can still do in a work setting despite that claimant's physical or mental limitations. Martise v. Astrue, 641 F.3d 909, 923 (8th Cir. 2011) (citation omitted); 20 C.F.R. § 416.945(a)(1). An ALJ determines a claimant's RFC "based on all the relevant evidence, including medical records, observations of treating physicians and others, and [claimant's] own description of [her] limitations." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)). In Singh and Lauer, the Eighth Circuit clarified that a claimant's RFC is a medical question. Lauer, 245 F.3d at 704; Singh, 222 F.3d at 451. As such, at least "some medical evidence must support the determination of a claimant's RFC." Lauer, 245 F.3d at 704 (internal quotation omitted). See also Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016).

1. Mental RFC

Plaintiff argues that, in assessing the effects of her mental impairments on her mental functioning, the ALJ erred in discounting the Missouri HealthNet system's provision of a home health aide. Social Security Ruling 06-03p requires that an ALJ consider "all the evidence in the case record that may have a bearing on [the Commissioner's] determination or decision of disability, including decisions by other governmental and nongovernmental agencies[.]" SSR 06–03p, 2006 WL 2329939, *6 (S.S.A. Aug. 9, 2006). "These decisions, and the evidence used to make these decisions, may provide insight into the individual's mental and physical impairment(s) and show the degree of disability determined by these agencies based on their rules." Id. However, an ALJ "is not bound by the disability rating of another agency when he is evaluating whether the claimant is disabled for purposes of social security benefits." Pelkey v. Barnhart, 433 F.3d 575,

579 (8th Cir. 2006).  See also 20 C.F.R §§ 404.1504, 416.904 ("Because a decision by any other governmental agency or nongovernmental entity about whether you are disabled, blind, employable, or entitled to benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules.").

Plaintiff submitted to the ALJ an "action notice" from the Missouri Department of Social Services dated July 2016 informing her that she "had been approved for medical coverage through the MO HealthNet for the Aged, Blind, and Disabled program." (Tr. 323)  Additionally, Plaintiff presented a "Home Community Based Services Care Plan," stating that she was authorized to receive home health services "to help you remain in your home." (Tr. 1357)  The plan included assistance in dressing/grooming, housekeeping, shopping, and self-administration of medications. (Id.)

The ALJ acknowledged that MO HealthNet approved Plaintiff for in-home personal care and "homemaker chore" services.  (Tr. 19)  The ALJ stated, however, that "[a] finding that the claimant is eligible for MO HealthNet benefits and that she requires some assistance with personal care and homemaker chores does not mean the claimant is unable to perform work-related activities."  (Id.)  The ALJ explained the "processes utilized to determine eligibility for MO HealthNet services and the processes utilized by the [SSA] to determine disability are fundamentally different."  (Id.)  For example, MO HealthNet "does not make a function-by-function assessment of an individual's capabilities … or determine whether the claimant is able to perform either his past relevant work or other work that exists in significant numbers in the national economy[.]"  (Id.)  The ALJ therefore concluded that Plaintiff's entitlement to MO HealthNet benefits was "of little probative value" and assigned it "little weight."  (Id.)  The Court finds that

9

the ALJ properly considered the MO HealthNet determination in assessing Plaintiff's RFC as required by Security Ruling 06-03p.

Plaintiff asserts that the ALJ's decision "offers absolutely no rationale" in support of the finding that Plaintiff was capable of unskilled work.  A review of the decision, however, reveals that the ALJ summarized Plaintiff's testimony regarding her limitations, as well as the treatment notes and opinion evidence, assessed the credibility of her subjective complaints, and explained his RFC determination.

The regulations provide that, when a claimant has medically determinable mental impairments, the ALJ must consider the degree to which those impairments limit the claimant's functioning in four areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintain pace; and (4) adapting or managing oneself. See 20 C.F.R. §§ 404.1520a, 416.920a.  The ALJ performed this analysis and explained his findings.  In regard to understanding, remembering, or applying information, the ALJ found that Plaintiff was only mildly limited because she did not require help or reminders to take her medications and, in her function report, she noted no difficulties with memory and stated that she was able understand and follow written and verbal instructions.  (Tr. 15)

In the functional area of interacting with others, the ALJ found that Plaintiff had moderate limitations.  (Id.)   The ALJ acknowledged Plaintiff's testimony that she experienced anxiety when out in public and, when she was anxious, lashed out at others over minor irritations.  (Id.) However, she also reported that she: regularly spent time with a friend in person and on the phone; got along well with authority figures; was never terminated from a job due to a difficulty getting along with others; and attended church when she was able.  (Id.)

Next, the ALJ assessed Plaintiff as moderately limited in the area of concentrating, persisting, or maintaining pace.  The ALJ noted Plaintiff's testimony that she lacked interest in "taking care of her home and other things."  (Id.)  Additionally, Plaintiff stated in her function report that her conditions affected her ability to concentrate, she did "not finish what she starts," and she could not "pay attention long without her medication." (Id.)  The ALJ observed, however, that Plaintiff reported "that she reads every day, suggesting an ability to focus." (Id.)

Finally, the ALJ determined that Plaintiff had moderate limitations in the area of adapting or managing oneself.  (Id.)  The ALJ again acknowledged Plaintiff's testimony that she lacked interest in taking care of her home and that "she lashes out at others when she is anxious, suggesting some difficulty in keeping her emotions under control." (Id.)  On the other hand, Plaintiff's function report stated that she was "generally able to care for her personal needs…, although she sometimes needs help due to her physical condition" and she took care of her child and family dog, managed her own finances, and performed a number of household chores, including preparing meals, shopping, laundry, washing dishes, and wiping tables.  (Id.)

The ALJ proceeded to review and summarize Plaintiff's medical records, noting that "[m]any mental status examinations showed normal mood, affect, and behavior, as well as good memory, logical thought processes, and intact insight and judgment." (Tr. 18)  Additionally, Plaintiff informed her treating doctors that her psychotropic medications were working well, she was "doing better with treatment," and she used her Xanax only three or four times per month. (Tr. 18)  "If an impairment can be controlled by treatment or medication, it cannot be considered disabling."  Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010) (quoting Brace v. Astrue, 578 F.3d 882, 885 (8th Cir. 2009)).

Finally, the ALJ considered the medical opinion evidence relating to Plaintiff's mental impairments and resulting limitations. (Tr. 20) Plaintiff's psychiatrist Dr. Reddy completed a mental RFC questionnaire stating that Plaintiff had "bipolar disorder, most recent mixed episode," and her prognosis was "guarded" but "may improve with treatment." (Tr. 1340) Dr. Reddy did not complete the checklists identifying Plaintiff's symptoms or the functional limitations, but he stated that Plaintiff "has episodes of depression and anxiety," which were "likely to affect her functioning." (Tr. 1342) The ALJ assigned "considerable weight" to Dr. Reddy's "overarching opinion that the claimant's mental illness affected her overall functionality."[2] (Tr. 20)

Contrary to Plaintiff's suggestion, the ALJ did not ignore or minimize Plaintiff's mental symptoms. He acknowledged that Plaintiff was admitted for inpatient psychiatric treatment in December 2016 and her records reflected reports of "excessive worry, difficulty sleeping, panic attacks, mood lability, anger, aggression, crying spells, racing thoughts, increased [sic] goal-directed activity, decreased need for sleep, homicidal ideation, and passive suicidal ideation." (Tr. 19-20) For these reasons, the ALJ found that Plaintiff's mental impairments "would limit her to unskilled work and result in restrictions on her ability to make decisions and interact with others." (Tr. 20) The ALJ accounted for these symptoms in the RFC by limiting Plaintiff to "simple routine, and repetitive tasks, and simple work-related decisions" and only "occasional interaction with supervisors, coworkers, and the public." (Tr. 16)

Finally, Plaintiff appears to challenge the ALJ's determination that she was capable of sustaining full-time employment despite her reported panic attacks, which she variously claimed

---

[2] The ALJ also reviewed the April 2016 opinion of the Disability Determination Services' psychological consultant Dr. Morgan. (Tr. 20) Dr. Morgan assessed Plaintiff's limitations as mild in the areas of activities of daily living, social functioning, and maintaining concentration, persistence, or pace, and he concluded that Plaintiff's mental impairments were non-severe. (Tr. 65) The ALJ disagreed with Dr. Morgan's assessment and assigned it little weight. (Tr. 20)

occurred two to four times per month.  However, in June, August, and December 2017, Plaintiff informed her psychiatrist she was experiencing panic attacks "about once a month but overall doing much better."  (Tr. 1315)  Given that the record did not support the alleged severity of Plaintiff's panic attacks, the ALJ did not err in failing to accommodate these episodes in the RFC.

An ALJ's decision is not to be disturbed "'so long as the ... decision falls within the available zone of choice.  An ALJ's decision is not outside the zone of choice simply because [the Court] might have reached a different conclusion had [the Court] been the initial finder of fact.'"  Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011) (quoting Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008)). Although Plaintiff identifies evidence supporting a different conclusion, the ALJ's decision, and, therefore, the Commissioner's, was within the zone of choice and should not be reversed for the reasons set forth above.  See Fentress v. Berryhill, 854 F.3d 1016, 1020 (8th Cir. 2017).  The Court finds that substantial evidence, including medical evidence, supported the ALJ's mental RFC determination.

2.  Physical RFC

Plaintiff challenges the ALJ's determination that she was able to perform a limited range of sedentary work.  Significantly, Plaintiff neither identifies additional limitations that she contends the ALJ should have included nor points to medical evidence warranting additional limitations.  Rather, Plaintiff asserts that the ALJ failed to "properly analyze the probative value of the objective evidence" relating to her physical limitations.

In his decision, the ALJ thoroughly reviewed and summarized Plaintiff's extensive medical records.  For example, the ALJ noted that:  Plaintiff "complained of pain in her neck, low back, and right hip, as well as generalized body pain[,] … right leg numbness, fatigue, headaches, and dizziness"; physical exams showed "positive fibromyalgia tender points," "cervical tenderness,

13

tingling in the right arm, lumbar tenderness, decreased lumbar range of motion, positive lumbar facet loading, lower extremity weakness, and difficulty ambulating"; and Plaintiff "occasionally complained of shortness of breath, wheezing, and dry cough[.]" (Tr. 19)  At the same time, the ALJ recognized that "[m]any physical examinations showed normal range of motion, strength, sensation, and reflexes" and "[s]ome straight leg raising tests were normal." (Id.)  Furthermore, MRIs "revealed a mild diffuse disc bulge with annular tear at L4-L5, resulting in mild lateral recess stenosis, as well as a disc herniation at L5-S1 resulting in displacement of the S1 nerve roots and mild bilateral recess stenosis" and "shallow, broad-based disc/spur complexes at C4-C5 and C5-C6 with no central canal or foraminal stenosis." (Tr. 19) See e.g., Steed v. Astrue, 524 F.3d 872, 875 (8th Cir. 2008) ("Even where [claimant's] diagnostic tests showed actual disc herniation or bulging, the diagnosis is tempered in several instances in the medical records by the words 'mild' or 'minimal' regarding either the herniation, or its effects.").

The ALJ also found that Plaintiff's medications were effective.  Plaintiff reported that "her paid medication was helpful," "her pain was noted to be well controlled with medication," and Plaintiff "reported excellent benefit from epidural steroid injections." (Tr. 18)  As previously discussed, an impairment is not considered disabling if it can be controlled by treatment or medication.  Renstrom v. Astrue, 680 F.3d 1057, 1066 (8th Cir. 2012) (citing Brown, 611 F.3d at 955).

The ALJ correctly noted that the record contained no opinions from treating physicians either restricting Plaintiff's activities or assessing her physical limitations.  "Where a plaintiff's medical records show a lack of significant restrictions imposed by treating physicians, such evidence supports an ALJ's finding of no disability." Walker v. Colvin, 124 F.Supp.3d 918, 934 (E.D. Mo. 2015) (citing Choate v. Barnhart, 457 F.3d 865, 870 (8th Cir.2006), Brown v.

14

Chater, 87 F.3d 963, 965 (8th Cir.1996)).  See also Bryant v. Colvin, 861 F.3d 779, 784 (8th Cir. 2017) (lack of significant medical restrictions was inconsistent with complaints of disabling pain).

Plaintiff challenges the ALJ's finding that her subjective complaints were "out of proportion to the objective medical evidence" and inconsistent with her activities of daily living. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."[3]  Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001).  "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination."  Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006).

The ALJ considered the following factors when evaluating the credibility of Plaintiff's subjective complaints:  the objective evidence, including physical examinations and diagnostic imaging studies, did not support the degree of symptoms and limitations she alleged; her prescribed medications and epidural steroid injections were effective in managing her pain; and none of her treating doctors restricted Plaintiff's activities.  (Tr. 18-19)  Additionally, the ALJ found that Plaintiff's activities of "daily living … are not limited to the extent one would expect given the complaints of disabling symptoms and limitations."[4]  (Tr. 17-19)  While Plaintiff correctly asserts that an ability to perform sporadic, light activities does not demonstrate an ability to perform full-

---

[3] In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints.  Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

[4] For example, the ALJ noted that Plaintiff regularly attended church "when she feels up to it," remained involved in her church's ministries, cared for her children and dog, performed "a number of household chores," and spent several hours at a time shopping in public.  (Tr. 15, 17)

time, competitive work, a claimant's daily activities that are inconsistent with her subjective complaints may support an adverse credibility determination. See McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013) (ALJ properly discounted plaintiff's credibility where, among other factors, plaintiff "was not unduly restricted in his daily activities, which included the ability to perform some cook[ing], tak[ing] care of his dogs, us[ing] a computer, driv[ing] with a neck brace, and shop[ping] for groceries with the use of an electric cart"). The ALJ provided "good reasons," supported by substantial evidence, for finding that Plaintiff's symptoms were less limiting than she alleged.

In sum, the record supports the ALJ's finding of moderate physical limitations, which the ALJ properly factored into the RFC determination. While Plaintiff argues that the ALJ failed to support his findings with evidence in the record, this Court finds that the ALJ, in fact, appropriately cited the medical evidence and satisfied the standards of Singh and Lauer, which require at least "some medical evidence" in support of the RFC.

C. Vocational Expert's Testimony

Plaintiff asserts that the hypothetical question presented to the vocational expert did not capture the concrete consequences of Plaintiff's condition and, therefore, the vocational expert's response did not constitute substantial evidence supporting the ALJ's finding that Plaintiff was able to perform work that existed in significant numbers in the national economy. The Commissioner counters that the ALJ properly relied on the vocational expert's testimony because the hypothetical question included the functional limitations that the ALJ found well supported by the record.

As previously discussed, the Court finds the ALJ's RFC determination was supported by substantial evidence. Accordingly, as the ALJ's hypothetical question appropriately included the

restrictions set forth in the RFC determination, the ALJ properly relied on the vocational expert's testimony. Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001) ("A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ.") Because there were other jobs that Plaintiff could perform, the Court finds that the ALJ's determination that Plaintiff was not disabled was based on substantial evidence and consistent with the regulations and case law.

## VI. Conclusion

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole supports the Commissioner's decision that Plaintiff is not disabled. Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying Social Security benefits to Plaintiff is **AFFIRMED**.

A separate judgment in accordance with this Memorandum and Order is entered this date.

PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of April, 2020